**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:05-CR-00093 OWW DLB |
|     **Plaintiff-Appellee,** | ORDER DENYING DEFENDANT'S APPEAL FROM CONVICTION |
|     **v.** | |
| **ATILANO MAGBALETA,** | |
|     **Defendant-Appellant.** | |

## I.  INTRODUCTION

Defendant Atilano Magbaleta appeals his conviction in Magistrate Court of misdemeanor assault.

## II.  PROCEDURAL HISTORY

Defendant was arrested in Yosemite National Park on July 17, 2004, and charged with a single count of assault under Title 18, Section 113(a)(4), of the United States Code. Doc. 1, Citation for Assault. He first appeared before Magistrate Judge William M. Wunderlich on August 17, 2004. Doc. 2, Minutes. He was tried by the magistrate judge without a jury on December 8, 2004, was found guilty, and on March 1, 2005, was sentenced to pay a fine of two hundred fifty dollars. Trial Tr. at 1; Sentencing Tr. at

1

1. Defendant timely filed his notice of appeal on March 9, 2005, Doc. 11, and his opening brief on May 16, 2005, Doc. 16. Plaintiff filed its reply brief on July 29.  Doc. 20.  Defendant filed his response on August 17, 2005.  Doc. 22.

### III.  BACKGROUND

The complaining witness, Olivia Magbaleta, is Defendant's sister.  Trial Tr. at 39-40.  She testified at trial that Defendant and she were attending a family gathering at Curry Village in Yosemite National Park on July 17, 2004.  According to Olivia, she was watching a DVD on a laptop computer with her children in their cabin when Defendant entered the cabin and demanded the laptop, verbally abusing her as he did so.  Id. at 41-44.  After giving him the laptop, she followed him to their mother's cabin to retrieve food and drink for her children.  Id. at 45.  She entered the cabin first.  Id.  When she bent over to open the ice chest, Defendant grabbed her from behind, lifted her by the neck, and slammed her into the wall of his cabin, holding her off the ground for approximately ten to fifteen seconds.  Id. at 46-47.  She denied striking him prior to the attack.  Id. at 48.

Defendant presented several witnesses whose testimony contradicted Olivia's.  Dorothy Sullivan, aunt to Olivia and Defendant, testified that just before the events in question she saw Olivia closely following Defendant to his cabin, screaming verbal abuse at him.  Id. at 71-72.  Defendant did not react to the abuse, but continued walking and entered the cabin.  Irene Acosta, another of their aunts, testified that she was inside their mother's cabin when she saw Olivia strike Defendant several

1  times while swearing loudly at him and demanding that he return
2  the laptop.  Id. at 93.  Defendant was shielding the laptop with
3  his body, and did not react to Olivia's blows until his three-
4  year-old daughter ran up to them from the bathroom.  Id. at 97.
5  At that point, Defendant pushed Olivia away from him and held her
6  against the wall, releasing her when told to do so by their
7  mother and aunt.  Id. at 98-99.  Olivia was kicking and throwing
8  items while Defendant held her against the wall.  Id. at 110-11.
9       Barbara Forney is the mother of Olivia and Defendant.  Id.
10 at 112.  She testified that Olivia entered her cabin first,
11 looking for milk and appearing to be very angry.  When Defendant
12 entered the cabin, Olivia began shouting and swinging her arms
13 threateningly.  Id. at 115.  Defendant's daughter emerged from
14 the shower, and he knelt down to dry her off.  Olivia began
15 hitting and kicking Defendant on the back, then threw a plastic
16 cup at him.  Ms. Forney turned around to move her grand-daughter
17 out of the way, and when she looked up again Defendant had shoved
18 Olivia against the wall and was holding her there with his
19 shoulder and upper arm.  Id. at 115-16.  Olivia continued to kick
20 and scream until Defendant released her at his mother's urging.
21 Id. at 116-17.
22      Photographs of the injuries which Olivia alleged that she
23 suffered at Defendant's hands were admitted into evidence.  These
24 injuries included bruising and scrapes about her neck and a
25 bruise and laceration on her back.  Id. at 9-11.  A medical
26 screening form was admitted into evidence, which was completed by
27 a park ranger when Defendant was booked and which bore
28 Defendant's signature.  The form describes Defendant as

**3**

uninjured. Id. at 157-60.

Defendant relied on self-defense and defense of another, his three-year-old daughter, who entered the room as Olivia was allegedly striking Defendant in a violent rage. Trial Tr. at 164-68. The magistrate court rejected these defenses based on the photographs of Olivia, which, the judge found, proved that Defendant had used excessive force even if he believed in good faith that he was acting in defense of himself or his daughter. Trial Tr. at 170; Sentencing Tr. at 3.

## IV.   JURISDICTION

A district court has jurisdiction over an appeal from a misdemeanor conviction after trial before a magistrate judge pursuant to Title 18, Section 3402, of the United States Code. *United States v. Waites*, 198 F.3d 1123, 1126 (9th Cir. 2000).

## V.   LEGAL STANDARDS AND ANALYSIS

Defendant appeals his conviction on two grounds: (1) that the magistrate court misapplied the doctrine of self-defense, and (2) that the intake form should not have been admitted into evidence.

A.   Standard of Review

Where a district court reviews a conviction by a magistrate judge, the standard of review is the same as when a court of appeals reviews the judgment of a district court. The reviewing court reviews the trial court's findings of fact for clear error. A finding of fact is deemed clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Conclusions of law are reviewed *de novo*. Unless a mixed question

**4**

1  of fact and law is primarily factual, mixed questions are
2  reviewed *de novo*.  *U.S. v. Lex*, 300 F.Supp.2d 951, 956 (E.D.Cal.
3  2003) (citations and internal quotation marks omitted).  A
4  reviewing court must respect the exclusive province of the fact
5  finder to determine the credibility of witnesses, resolve
6  evidentiary conflicts, and draw reasonable inferences from proven
7  facts.  *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir.
8  1996); Rule 52(a), F.R.Civ.P.
9  B.   Analysis
10 1.   The Law of Self-Defense
11       Use of force against another is justified when a person
12 reasonably believes that it is necessary for the defense of
13 oneself against the immediate use of unlawful force by the other.
14 *United States v. Keiser*, 57 F.3d 847, 853 (9th Cir. 1995).  Once
15 defendant introduces evidence of self-defense, the burden shifts
16 to the government to disprove it beyond a reasonable doubt.
17 *Keiser*, 57 F.3d at 851 fn.4.  In a claim of self-defense, the
18 force used in response to force introduced by another must be
19 objectively reasonable in proportion to the perceived threat.
20 *See, e.g.*, *United States v. Pierre*, 254 F.3d 872, 874 (9th Cir.
21 2001) (*quoting* 9th Cir. Crim. Jury Instr. 6.5, at 102 (West
22 1997)); *United States v. Oakie*, 12 F.3d 1436, 1443 (8th Cir.
23 1993); *United States v. Black*, 692 F.2d 314, 318 (4th Cir. 1982);
24 *see also* 2 Wayne R. LaFave, *Substantive Criminal Law* § 10.4
25 [hereinafter, "LaFave"] ("[i]n determining how much force one may
26 use in self-defense, the law recognizes that the amount of force
27 which he may justifiably use must be reasonably related to the
28 threatened harm which he seeks to avoid").

**5**

2.  Analysis

In finding Defendant guilty, the magistrate court stated:

> The [c]ourt concludes that the most compelling evidence in this case was not the testimonial evidence necessarily but the testimonial evidence coupled with the demonstrative evidence contained in the photographs.
>
> These injuries on the victim belie the thought of the shoulder pushing her against the wall.  This was a strong enough pushing to have cut her twice in the back and to have bruised her in a fashion consistent with the argument made by [g]overnment's counsel.
>
> Defendant is found guilty as charged.

Trial Tr. at 170-71.

In sentencing Defendant, the magistrate judge characterized the basis for the finding of guilt:

> Mr. Magbaleta, I'm convinced that this was out of character for you.  I thought at the time this was aberrant behavior, and I would say certainly not motivated by or caused by your sister, but certainly she was no blameless player in this thing[.]  But still those marks on her neck convinced me that you had done something inappropriate, and I'm very comfortable with my decision in this case.

Sentencing Tr. at 3.

Defendant argues that these two statements by the magistrate judge mean that he considered only the amount of force Defendant used against Olivia, not whether Defendant subjectively believed

1 in good faith that the amount of force used was objectively
2 reasonable.  Defendant argues that if he believed in good faith
3 that the force he used against Olivia was reasonable, he is
4 entitled to the defense of self-defense or defense of other.

5 Defendant mis-states the doctrine.  Good-faith belief that
6 the amount of force used is objectively reasonable is not alone
7 sufficient to justify Defendant's actions on the grounds of self-
8 defense.  Self-defense requires that the amount of force used
9 have been objectively reasonable in fact.  *Pierre*, 254 F.3d at
10 874; *Oakie*, 12 F.3d at 1443; *Black*, 692 F.2d at 318; LaFave,
11 § 10.4.

12 At oral argument, Defendant also discussed "imperfect self-
13 defense."  That doctrine only mitigates murder to manslaughter,
14 and has no application outside the homicide context.  *Menendez v.*
15 *Terhune*, 422 F.3d 1012, 1028 (9th Cir. 2005); LaFave, § 10.4(I);
16 *McNeill v. Middleton*, 402 F.3d 920-921 (9th Cir. 2005); *cert.*
17 *denied*, 126 S.Ct. 664 (2005).

18 Here, the magistrate judge's findings reflect that he
19 considered both the amount of force that Defendant used, and the
20 way he used it, in rejecting the defenses of self-defense and
21 defense of another.  At the conclusion of trial, the magistrate
22 judge chose to discredit the defense witness testimony that
23 Defendant had merely used his shoulder to push and hold Olivia
24 against the wall of the cabin.  Trial Tr. at 170:22-23.  Instead,
25 the magistrate judge found that Defendant had seized Olivia by
26 the neck and shoved her into the wall using an unreasonable
27 amount of force.  Trial Tr. at 170:23-171:1.  The magistrate
28 judge based his findings chiefly on the photographs of Olivia's

**7**

injuries – bruising and scrapes about her neck, and a bruise and laceration on her back – which the magistrate judge found not to be consistent with the defense's account of the events. Trial Tr. at 170-71. The net result was that the defenses were rejected.

The magistrate judge restated his rejection of the defense's theories of self-defense and defense of other at sentencing. Sentencing Tr. at 3:2-10. The magistrate judge found that Olivia's actions, even if not entirely innocent, did not justify the amount of injury-producing force used by Defendant against her. Sentencing Tr. at 3:4-7. The magistrate judge re-iterated that he based his conclusion chiefly on the photographs of Olivia's injuries. Sentencing Tr. at 3:8-10.

Viewing the evidence in the light most favorable to the prevailing party, substantial evidence supports these findings. In addition to the photographs, the magistrate judge was entitled to consider the relative sizes of Olivia and Defendant. Olivia is five feet, three inches tall. She weighed one hundred thirty pounds when the events took place. Trial Tr. at 48-49. Defendant was taller and weighed approximately two hundred pounds. Trial Tr. at 21.

The defense witnesses contradicted one another on certain points. Irene Acosta testified that Defendant entered first, pursued closely by Olivia, who was striking and swearing at him. Trial Tr. at 92-93. Barbara Forney testified that Olivia entered first, then Defendant. Trial Tr. at 115. Ms. Acosta testified that Defendant continued shielding the laptop from Olivia until his daughter ran up to them from out of the bathroom. Trial Tr.

**8**

1  at 97-99.  Ms. Forney testified that Defendant put the laptop
2  down to help dry off his daughter, who had just emerged from the
3  shower, and only reacted to Olivia's blows when she threw a hard
4  plastic cup at him.  Trial Tr. at 115-16.  Ms. Forney testified
5  that she did not witness the first moments of Defendant's attack,
6  because she had turned around to move Defendant's daughter out of
7  the way.  Trial Tr. at 116

8     A conviction is supported by sufficient evidence if, viewing
9  the evidence in the light most favorable to the government, any
10 rational trier of fact could have found the essential elements of
11 the crime beyond a reasonable doubt.  *United States v. Dowd*, 417
12 F.3d 1080, 1085 (9th Cir. 2005) (citation and quotation marks
13 omitted).  The test applies to both jury and bench trials.
14 *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir.
15 2000).  Since Defendant's basis for appeal is that the evidence
16 was insufficient to support the finding of guilt, the court
17 construes the evidence in the manner most favorable to the
18 government, drawing all inferences that may reasonably be drawn
19 against Defendant.  *United States v. Rodriguez*, 360 F.3d 949, 955
20 (9th Cir. 2004).  The record supports the inference that
21 credibility was found against Defendant and his witnesses.  There
22 was evidence that Defendant and the rest of the family members
23 were aligned against Olivia.  Past problems between Defendant and
24 Olivia gave him an incentive to use more force against her.  The
25 facts support a finding of more force than reasonably necessary
26 to restrain Olivia: (1) by grabbing her by the neck, and (2)
27 shoving her against the wall with sufficient force to cut her
28 back in two places.  This evidence was sufficient to prove the

unlawful use of force.  Defendant's first ground for appeal is DENIED.

2.   Admissibility of Government's Exhibit 8 (the Park Services Medical Screening Intake Form)

The top of the Park Services Medical Screening Intake Form ("the intake form") is labeled "Yosemite National Park Holding Facility," which includes the words "Medical Screening."  Ranger Joshua J. Streby testified that every inmate upon arrival at the holding facility for intake is asked the questions set forth in writing on the form.  The admitting Ranger fills out this form for every arrestee as a matter of business custom and practice, pursuant to a duty established by law.  Trial Tr. at 157.  The first question is: "Do you have any injuries?"  "Y or N" appears next to this question.  On Defendant's form, the letter "N" is circled.  The government cited the intake form as evidence that Defendant was unhurt after Olivia allegedly assaulted him, arguing both that no such assault took place, or, if it did take place, that the absence of injury shows Olivia's actions did not require the force used by Defendant to respond.

Under "Name," "Magbaleta Jr." is listed.  The form is dated "7/17/04," the date of the altercation.  The form bears a signature which is illegible.

Upon cross-examination, Ranger Streby conceded that he did not personally remember filling out the form or booking Defendant, however, Streby was the intake officer and recognized his own writing.  This is sufficient evidence to support the inference of personal knowledge and to corroborate the authorship of the intake form by Streby.  Defendant's objection on hearsay

**10**

grounds to the admission of the intake form was overruled.

A claimed violations of the Sixth Amendment confrontation clause and a court's ruling on application of the hearsay rule are reviewed *de novo*. A court's decision to admit evidence under exceptions to the hearsay rule is reviewed for abuse of discretion. *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148 (9th Cir. 2002) (citations omitted).

Defendant argues that the form should have been excluded because it lacked foundation, since Streby did not recall filling it out; that it was hearsay; and that it was not authenticated.

<u>Authentication and Hearsay</u>

The authentication requirements are properly satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), Fed.R.Evid. The proponent need not establish a proper foundation through personal knowledge; a proper foundation "can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 774 (9th Cir.2002). Rule 901 allows the district court to admit evidence "if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004).

Here, Streby testified that, although he did not specifically remember filling out this particular booking form, he recognized his own handwriting on the form. He testified that the form is regularly prepared and maintained in the intake to custody of every detainee, and it was his personal practice to ensure that the form accurately reflected the answers given by an

**11**

inmate upon intake.  He also testified that it was his practice to always obtain an inmate's signature.  The signature line appears just below a line that reads, in bold characters: "I have answered these questions truthfully."  This evidence is sufficient for a reasonable trier of fact to conclude that the form is a genuine intake form used at the time of Defendant's intake to custody, bearing his signature and the signature of Streby, who booked defendant.  This proves it is the intake form for Defendant completed when he was admitted to custody on the date of the altercation.  It also proves indisputably that the form was an official government record regularly prepared and kept in the ordinary business of the park ranger facility for detainees after arrest.

The form contains an admission, authenticated by Defendant's signature, that he had no injuries when he arrived at the holding facility.

Rule 801 of the Federal Rules of Evidence provides in relevant part:

> A statement is not hearsay if. . . [t]he statement is offered against a party and is (A) the party's own statement . . . or (B) a statement of which the party has manifested an adoption or belief in its truth.

Rule 801(d)(2), F.R.Evid.[1]

---

[1] The form as to Streby's "report" is admissible under the business record exception of Rule 803(6), because although a booking form is a report by an officer who had a duty to complete

**12**

There is a sufficient evidence to conclude that the statements on the form attributed to Defendant are his admission that he was not injured. Under Rule 801, the intake form as to defendant's physical condition is not hearsay. The magistrate did not err in admitting the form.

<u>Confrontation Rights</u>

Defendant also argues that the admission of the form violated his Sixth Amendment right of confrontation, as interpreted by the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Court held that out-of-court statements by witnesses hostile to the defendant must be subjected to cross-examination if they are to be admitted into evidence. Defendant argues that Streby's inability to remember Defendant's physical condition when he arrived for booking deprived Defendant of a meaningful opportunity to cross-examine Streby.

This argument lacks merit. The statement to which Defendant objects is his own, confirmed by his signature as part of the booking process. There is no hostile third-party witness who needs to be cross-examined under *Crawford*. The statement is inherently reliable, because it is Defendant's. There is no *Crawford* issue. The form was admissible.

## VI.   CONCLUSION

For all the reasons stated above, the Magistrate Judge's

---

the form, as to Streby's "report," it is offered in a criminal case as to matters observed by the officer. *See Bemis v. Edwards*, 45 F.3d 1369, 1374 (9th Cir. 1995.

**13**

judgment of conviction is AFFIRMED.

**SO ORDERED**

**DATED:  February 24, 2006.**

                                   **/s/ OLIVER W. WANGER**
                                   _____
                                       **OLIVER W. WANGER**
                                   **United States District Judge**